# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
   **Plaintiff,**

  v.                     Case No. 01-CR-140

**MICHAEL IMPERL**
   **Defendant.**

## MEMORANDUM

  This case is before me on a limited remand pursuant to United States v. Paladino, 401 F.3d 471 (7th Cir. 2005). Under Paladino, the district court's task is to determine whether, in light of the now advisory nature of the guidelines, it would or would not adhere to the original sentence. In making this determination, the court must obtain the views of counsel, at least in writing, but need not require the presence of the defendant. Upon reaching its decision whether to re-sentence, the district court must either place on the record a decision not to re-sentence, with an appropriate explanation, or inform the court of appeals of its desire to re-sentence the defendant. Id. at 484.

  Upon receipt of the appellate court's remand order, I directed the parties to file briefs, then held a hearing on May 25, 2005. I now issue the following memorandum advising the court of appeals that I would still impose the same sentence in light of United States v. Booker, 125 S. Ct. 738 (2005).

## I. BACKGROUND

Defendant Michael Imperl was charged in an eight-count indictment with making a false statement in connection with a loan application (count one), bank fraud (counts two, three and four), and money laundering (counts five through eight). A jury convicted him of counts one, two and eight. On November 22, 2002, I sentenced him to 46 months in prison, the low end of the then-mandatory guideline range,[1] and ordered him to pay $971,375.48 in restitution. Defendant appealed, challenging various aspects of his sentence, but the court of appeals rejected his contentions. The court did, however, order a limited remand pursuant to the procedure set forth in Paladino.

## II. DISCUSSION

In order to determine whether, should defendant's sentence be vacated, I would exercise my discretion to impose a lower, non-guideline sentence, I will analyze this case as I have other post-Booker sentencings. See, e.g., United States v. Ranum, 353 F. Supp. 2d 984 (E.D. Wis. 2005). Post-Booker, I typically follow a three-step sentencing procedure: (1) calculate the guideline range; (2) determine whether any departures are applicable; and (3) decide whether to impose a guideline or non-guideline sentence under the factors set

---

[1] The PSR recommended a loss figure of $3.2 million, with a resulting guideline range of 70-87 months. However, because the district court may not include as relevant conduct misdeeds that are not criminal or at the very least unlawful in nature, United States v. Schaefer, 291 F.3d 932, 939-40 (7th Cir. 2002); see also United States v. Peterson, 101 F.3d 375, 385 (5th Cir. 1996) ("To hold otherwise would allow individuals to be punished by having their guideline range increased for activity which is not prohibited by law but merely morally distasteful or viewed as simply wrong by the sentencing court."), I reduced the loss figure to $1.4 million. Because this was a large scale fraud case in which defendant was attempting to keep a sinking business afloat, I was careful not to include mere "bad debt" or losses resulting from merely unscrupulous conduct. I thus gave defendant the benefit of the doubt in the loss determination. With the reduction in the loss figure, the guideline range became 46-57 months.

forth in 18 U.S.C. § 3553(a). United States v. Smith, 359 F. Supp. 2d 771, 772-73 (E.D. Wis. 2005). In the present case, the court of appeals has affirmed my guideline calculations. I rejected all of defendant's departure requests at his original sentencing, and defendant does not seek any departures now; rather, he argues that I should reduce his sentence under § 3553(a). Thus, only the third step need be analyzed.

Under § 3553(a), the relevant factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

The statute directs the court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)." United States v. Galvez-Barrios, 355 F. Supp. 2d 958, 960 (E.D. Wis. 2005). I typically group the § 3553(a) factors into three categories: the nature of the offense, the history of the defendant, and the needs of the public and any victims. I analyze each category and in so doing consider

3

the specific statutory factors under § 3553(a), including the advisory guidelines. Ranum, 353 F. Supp. 2d at 989.

**A.     Nature of Offenses**

Defendant, an experienced real estate broker and land developer, committed a large scale fraud over a period of about five years. His scheme had three components: (1) he submitted false financial information to banks in order to obtain loans; (2) he diverted loan proceeds from their intended purposes to cover other expenses; and (3) he made misrepresentations to individual investors and sellers. Defendant's scheme caused terrible financial losses totaling over $3 million. While I determined that not all of that amount was the result of defendant's criminal conduct, it reflects the scope of defendant's activities.

The offenses were aggravated in other respects. First, defendant defrauded a vulnerable victim, Richard Hitzemann, by persuading him to switch properties used as collateral on a loan. At the time, Hitzemann was immobilized due to Paget's Disease and unable to personally visit the properties. Defendant assured Hitzemann that the properties were in good condition, but when Hitzemann later visited them he discovered they were worthless. Defendant also persuaded Hitzemann to release a mortgage on defendant's home so defendant could re-finance, promising to re-record the mortgage after he did so. Again, Hitzemann's legs were in casts at the time, and he relied on defendant, but defendant never re-recorded the mortgage. Defendant notes that he had a long-term business relationship with Hitzemann, which made Hitzemann a great deal of money. Nevertheless, the manner in which defendant treated Hitzemann in these instances was despicable.

Second, defendant acted for personal gain. He diverted the ill-gotten loan proceeds to cover personal and business expenses. During the period of the scheme, defendant was living in an $840,000 home in Arizona, vacationing in an 8000 square foot mansion that he claims was supposed to be converted into an elder care facility but was actually used as a retreat containing expensive furniture, an Olympic-size indoor pool and matching jet skis,[2] and sending one of his children to an expensive private school.

Third, defendant perjured himself in at least two specific instances at trial, willfully providing false testimony concerning (1) his dealings with Waukesha State Bank regarding the loan that formed the basis for count one, and (2) a note he provided Hitzeman. At defendant's original sentencing, I also remarked:

> I was frankly appalled by your testimony at the trial, in the sense that I thought that it was an incredible evasiveness, an incredible failure to understand what it is that you did. . . . And there has been this sort of willful refusal to accept responsibility . . . throughout this whole proceeding.

(Sen. Tr. at 61-62.)

At the Paladino hearing, defense counsel argued that defendant is an "incurable optimist" and perhaps pushed too hard to keep his venture afloat, believing he could turn things around. This argument seems a continuation of the claim forwarded at the original sentencing that this was all just a business deal that went bad. It was not; defendant committed crimes, intentionally defrauding and harming people for personal gain.

In sum, the offense was aggravated.

---

[2]Defendant's claim that this was to be an elder care facility was contradicted by the statement of his wife to the FBI referring to the property as "the Lake home."

## B. Character of Defendant

In contrast to the severity of the crime, defendant's character is positive. Prior to these offenses he had no criminal record. He is married and has three children, now aged 15, 10 and 10. Prior to his incarceration, defendant was quite involved in his children's lives, assisted their schools and sports teams, and regularly attended church. In sum, the record shows that he was a good and responsible husband and father, and that the family has suffered from his absence.

The record also shows that defendant had a lengthy and successful employment history. Due to his convictions, he will be forced to find another line of work upon release. There is no doubt that there will be collateral consequences from his convictions.

The record also shows that defendant has some health problems, including hypertension and acid reflux. However, there is no evidence that the BOP has been unable or unwilling to provide defendant with adequate medical care. I have no doubt that prison has been difficult for defendant, as he asserted in a letter to the court and as counsel reiterated at the hearing. But I have been presented with no convincing evidence that prison is substantially harder on him than on any other first time offender.

## C. Needs of Public and Victims

I doubt that defendant will re-offend or that he poses a danger to the public. However, there is a need for a substantial period of confinement to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct. The victims in the case are owed a substantial amount of restitution. However, I cannot conclude that it would be

appropriate to reduce the sentence to enhance defendant's ability to pay. Given the large amount and the fact that defendant's earning capacity will likely be substantially reduced, cutting his sentence a few months will not meaningfully enhance payment of restitution. Further, reducing the sentence on this basis would also depreciate the seriousness of the offense.

As noted, the guidelines called for a term of 46-57 months. Under all of the circumstances, I conclude that a sentence of 46 months is sufficient, but not greater than necessary, to satisfy the purposes of sentencing under § 3553(a)(2). I see no reason to vary from the guidelines. Although defendant's character is positive and his family situation sympathetic, these factors are adequately accounted for by imposing a sentence at the low end of the range. A lower, non-guideline sentence would unduly depreciate the seriousness of these aggravated offenses. It is also worth noting that under the 2004 version of the guidelines defendant's sentencing range would be two to three times higher. Defendant was properly sentenced under an earlier version to avoid ex post facto problems. See U.S.S.G. § 1B1.11(b)(1). However, the revised edition reflects the Sentencing Commission's current assessment of the severity of these crimes, which I consider under § 3553(a)(4) & (5).

Relying on my decision in Ranum, defendant argues that his sentence should be reduced below the guideline range because:

- both defendants went to trial claiming that they did not intend to harm or defraud anyone;

7

- both defendants had similar loss figures ($1,000,000+), committed their offenses over a period of time, and engaged in conduct to cover up what they had done when things began going badly;

- both wanted the ventures to succeed;

- in both cases the offense level was driven by the loss figure;

- both were reckless with others' money but did not intend to steal;

- both are about 50 years old, with families and no prior record;

- both have health problems;

- both suffered significant collateral effects;

- neither are dangerous or likely to re-offend; and

- restitution can better be paid in the community.

This case is nothing like Ranum. Mark Ranum was a loan officer who lent money to a start-up cruise company. The loans went bad and the bank he worked for lost $1,134,000. A jury convicted him of misapplication of bank funds because he made loans to the cruise company that were in excess of his lending authority, threw good money after bad when the venture began to sink, then tried to hide his actions from his employer. His guideline range was 37-46 months, based largely on the loss amount. However, I decided to impose a non-guideline sentence based on several factors the guidelines did not consider: (1) Ranum had no personal stake in the cruise company and made not one dime from his dealings with them, and he had no desire to harm the bank; (2) Ranum had an otherwise outstanding character reflected by comments from numerous business associates, including former co-workers at the victim-bank; and (3) Ranum was a devoted family man raising two daughters and providing care for elderly parents, one of whom

suffered from Alzheimer's Disease and recognized no one but Ranum. Under all of these circumstances, I concluded that a sentence one year and one day was sufficient. 353 F. Supp. 2d at 990-91.

In contrast to Ranum, this defendant acted for personal gain, using funds for a mansion retreat, to pay for an expensive house in Arizona and to send his kids to private school; defrauded the elderly and infirm; perjured himself at trial; and never accepted responsibility for his actions. There were many good reasons for imposing a non-guideline sentence in Ranum that simply do not exist here. See 18 U.S.C. § 3553(c).[3]

### III. CONCLUSION

Therefore, I determine that, in light of the additional discretion afforded by Booker, I would impose the original sentence. The Clerk is directed to transmit this memorandum to the court of appeals.

**SO ORDERED**.

Dated at Milwaukee, Wisconsin, this 2nd day of June, 2005.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

---

[3] At the hearing, defense counsel stated that defendant had a pre-trial plea offer that would have resulted in a 22 month sentence. Any potential plea deal is irrelevant now; defendant elected to go to trial, perjured himself, and declined to accept responsibility for his crimes.

9